UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Cheryl Graham,** | ) | Civil Action No.:_____ |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **Equifax Information Services, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Cheryl Graham, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

8. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

9. Venue is proper in the Florence Division because the Plaintiff resides in Marion County and the Defendant transacted business in this division.

## PARTIES

10. Plaintiff, Cheryl Graham, is a resident and citizen of the State of South Carolina, Marion County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

11. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

12. Defendant Equifax is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

13. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

14. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

15. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file, and failed to investigate Plaintiff's disputes. Defendant repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to be denied credit and subjected to further damages as set forth herein.

## FACTUAL ALLEGATIONS

16. On September 21, 2022, Plaintiff signed a System Purchase and Services Agreement with Vivint Smart Home (hereinafter referred to as "Vivint") for a security system for her elderly aunt. Plaintiff's aunt lived alone, and the security system was a way for her to feel safe in her own home. Financing for the security system was through Citizens Bank's Citizens Pay Line of Credit ("Citizens Bank"), Account ending 7070 (hereinafter referred to as the "Account").

17. In December 2022, three months after the security system was installed, Plaintiff's aunt passed away.

18. Plaintiff contacted Vivint to inform them of her aunt's passing and to close the Account since the security system was no longer needed. Vivint referred Plaintiff to its

4

Exception Review Team ("ERT"). Plaintiff provided Vivint's ERT with a copy of her aunt's death certificate and ERT agreed to close the Account and stop all charges.

19. Thereafter, Plaintiff received a notice from ERT confirming the Account was cancelled as of February 27, 2023, and that "[a]ll billing and monitoring of your Vivint system has been disabled. – The Vivint Team"

20. On April 4, 2023, Citizens Bank viewed Plaintiff's Equifax credit report.

21. On April 21, 2023, Plaintiff received an email from Vivint with a return shipping label attached for Plaintiff to return the security equipment directly to Citizens Bank.

22. On May 4, 2023, Plaintiff took the package containing all of the security equipment to FedEx for delivery to Citizens Bank using the shipping label provided by Vivint.

23. On May 9, 2023, Citizens Bank received the security equipment package from Plaintiff.

24. With the monitoring services cancelled, the Account closed, and all of the equipment returned directly to Citizens Bank, no further charges were owed by Plaintiff.

25. Unfortunately, Citizens Bank continued to bill and draft payments directly from Plaintiff's checking account.

26. In June 2023, Plaintiff went to her bank with documentation to show that the Account was closed and to stop all future attempts by Citizens Bank to draft funds from her checking account.

27. On August 10, 2023, on a three-way call with Plaintiff, a representative of Vivint told a representative of Citizens Bank that the Account was closed, and that they were not to draft any further payments.

28.     On or about September 6, 2023, Plaintiff received an alert that Citizens Bank was reporting the Account as 60-days past due on her credit reports.

29.     As a result of the Account reporting as delinquent, Plaintiff's credit score dropped 108 points from 824 to 716.

30.     On or about September 12, 2023, Plaintiff sent a dispute letter to Defendant ("First Dispute"), wherein Plaintiff informed Defendant of the events that led to the Account being reported incorrectly on her Equifax credit report. Plaintiff requested the inaccurate and misleading late pays reported by Citizens Bank be removed so her credit would be restored to the exceptional standing it was at prior to September 2023.

31.     Defendant received Plaintiff's letter and thereafter forwarded same to Citizens Bank.

32.     Defendant did no reinvestigation of Plaintiff's dispute, but simply accepted the response by Citizens Bank.

33.     On or about September 26, 2023, Plaintiff received Defendant's Investigation Results, wherein Equifax stated that Citizens Bank had verified the Account as accurate. As a result, the inaccurate late pays continued to be reported on Plaintiff's Equifax credit report.

34.     On October 4, 2023, Plaintiff received an email from Victoria Saunders, Executive Resolutions, Proactive Escalation Prevention Department with Vivint. In her email, Ms. Saunders stated, "We are writing to confirm the Vivint monitoring account has already been cancelled and the line of credit has now been submitted for forgiveness and backdate to 02/27/2023," and that Plaintiff could expect a refund in up to 14-21 days. The email went on to say Vivint was processing a payment to Citizens Bank and that the Account

would reflect as being paid in full on Plaintiff's credit.

35. In October 2023, Plaintiff sent a second written dispute ("Second Dispute") to Defendant again disputing the Account as inaccurate.

36. On or about November 7, 2023, Defendant sent the results of its investigation of Plaintiff's dispute, wherein Equifax stated the Account was updated to report as paid in full, and the "Status" was changed to "Account Closed; was 60-80 days past due."

37. Defendant did no independent reinvestigation of Plaintiff's dispute, but simply forwarded it to Citizens Bank and accepted their response.

38. On or about February 13, 2024, Plaintiff obtained a new copy of her Equifax credit report. The Account, the only derogatory account reporting on Plaintiff's Equifax credit report, was still incorrectly reporting as Paid Account/Zero Balance, Account closed, was 60-80 days past due and with a Date of First Delinquency of July 2023. The account status of 60-80 days past due and the date of first delinquency were completely inaccurate.

39. On or about March 21, 2024, Plaintiff sent a third dispute letter to Defendant ("Third Dispute"), wherein Plaintiff stated she had obtained a new copy of her Equifax credit report, and it was still inaccurately reporting the Account with late payments for months when no payment was due. Plaintiff requested that all late payments or the entire Account be removed so that her credit report would be correct.

40. Plaintiff never received a response from Defendant to her Third Dispute.

41. Defendant did no reinvestigation of Plaintiff's Third Dispute.

42. On or about July 11, 2024, Plaintiff sent a fourth dispute letter to Defendant ("Fourth Dispute"), wherein Plaintiff stated she had never received a response to her March 21, 2024,

7

dispute. Plaintiff again stated that her Equifax credit report was incorrectly reporting the Account as past due for months when no payments were actually due. Plaintiff requested Equifax to either remove all of the inaccurate late payments on the Account or delete the Account entirely.

43. On or about July 18, 2024, Defendant forwarded a letter to Plaintiff stating it was unable to locate a credit file in its database with the identifying information Plaintiff provided and requested Plaintiff send two items to verify her identity and current address.

44. On or about August 2, 2024, Plaintiff sent Defendant a copy of its July 18, 2024, letter, together with a copy of her W-2, a water bill to verify her address, and a copy of her July 11, 2024, dispute letter.

45. Defendant received Plaintiff's identifying documentation on August 8, 2024.

46. On or about August 12, 2024, Equifax sent a letter to Plaintiff stating the identifying documents Plaintiff provided were illegible and requested Plaintiff again provide two items to verify her identity and current address.

47. On or about August 26, 2024, Plaintiff sent Defendant a copy of its August 12, 2024 letter, and a copy of her driver's license and Social Security card.

48. Defendant received Plaintiff's identifying documentation on August 30, 2024, but never responded.

49. To date, Defendant continues to report inaccurate and misleading information on the Plaintiff's credit reports.

50. Since Defendant began publishing false information regarding the Account on Plaintiff's Equifax credit report, the Plaintiff's credit reports have been viewed by Capital

One, Dish Network, BB&T, and others.

51.   Defendant failed to make a reasonable investigation into any of Plaintiff's disputes.

52.   Upon receipt of the ACDV responses, Defendant simply accepted the furnisher's verifications of the Account and did not undertake to perform any investigation of its own.

53.   For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

54.   If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

55.   Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful

violations of the FCRA).

56. On January 17, 2025, Defendant stipulated to the entry of a Consent Order against it by the Consumer Financial Protection Bureau wherein it was found that Defendant "has on numerous occasions failed to initiate reinvestigations entirely and failed to process Disputes and conduct reinvestigations in a timely and reasonable fashion."

## **COUNT ONE**
(Fair Credit Reporting Act)

57. The Plaintiff adopts the averments and allegations of paragraphs 16 through 56 hereinbefore as if fully set forth herein.

58. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b) and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

59. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file. Defendant also failed to correct inaccurate information on Plaintiff's credit file.

60. Defendant repeatedly failed to reinvestigate Plaintiff's disputes.

61. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit and/or increased cost of

credit, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded her from seeking further credit opportunities and also caused her to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

62. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

63. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

64. The Plaintiff adopts the averments and allegations of paragraphs 16 through 63 hereinbefore as if fully set forth herein.

65. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b) and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

66. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

67. Defendant willfully failed to reinvestigate the Plaintiff's disputes.

68. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

69. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit and/or increased cost of credit, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded her from seeking further credit opportunities and also caused her to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

70. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

71. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

72. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.    For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorneysfor Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
508 Meeting Street
West Columbia, SC 29169